# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

J.C. o/b/o J.C., )
            Plaintiffs, )
   )
     v. )        Case No. 2:22-cv-12156
   )
FOWLERVILLE COMMUNITY )      District Judge Terrence G. Berg
SCHOOLS, )      Magistrate Judge Anthony P. Patti
   )
          Defendant. )      JURY TRIAL DEMANDED
   )
_____/

## PLAINTIFF'S SECOND AMENDED COMPLAINT

## INTRODUCTION

1.     Plaintiff, J.C. ("Plaintiff," "J.C.," or the "Student"), by and through his father, J.C., ("the Father,") and his undersigned counsel, hereby submits the following Amended Complaint against Fowlerville Community Schools ("Defendant," "Fowlerville" or "the District"), pursuant to the Michigan Persons with Disabilities Civil Rights Act ("PDCRA"), M.C.L. 37.1101 *et seq.*; Section 504 of the United States Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; and Title II of the Americans with Disabilities Act ("Title II"), 42 U.S.C. §§ 12131 *et seq.*

2. Plaintiff contends that Defendant discriminated against him by failing to timely identify him as a student with a disability and therefore unjustly expelling him from school, causing him to miss approximately 180 days of education.

3. The District also discriminated against the Student by failing to allow him to attend online school, prohibiting him from participating in extra-curricular activities and failing to provide any schooling for him while he was expelled.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this claim pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

5. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391 because: (i) Defendant operates a place of business within the District and has sufficient contacts with this District to subject it to personal jurisdiction at the time this action is commenced; and (ii) the acts and omissions giving rise to this claim have occurred within the District.

## PARTIES

6. J.C. is currently a 13-year-old male who resides in the Fowlerville Community School District.

7. J.C. has attended Fowlerville Community Schools from the 2019-2020 school year until the present, with the exception of the periods for which he was either suspended or expelled.

8.     A Community Mental Health report dated September 3, 2021, reported that Student met the Diagnostic and Statistical Manual of Mental Disorders (DSM-V) criteria for adjustment disorder with disturbance of emotions and conduct and post-traumatic stress disorder.  Presenting problems included reports of hyperactivity and inattention, which limited the Student's alertness to education.

9.     J.C. is an individual with a disability within the meaning of Section 504, the ADA, and the PDCRA.

10.    The Student has an impairment that substantially limits one or more major life activities, including his ability to behave appropriately in school.

11.    Fowlerville Community Schools is a recipient of federal financial assistance, subject to the requirements of Section 504, 34 C.F.R. § 104.11, and a public governmental entity subject to the provisions of the ADA, 42 U.S.C. §§ 12132, 12131(1)(A), (B).

### FACTS

12.    The Student has a long history of behavioral issues at school.  The Student can be disruptive, impulsive and disrespectful.  He exhibits aggression at times in addition to having other behavioral issues.

13.     As a result of these behavioral issues, the Student has been suspended on numerous occasions and been expelled.  He has missed a lot of schooling.  The Student had 22 discipline referrals during the 2021-2022 school year.

14.     Due to the Student's frequent suspensions, the Father requested that the School conduct a special education evaluation for the Student on September 2, 2021.  At that time, the Student was an 11-year-old fifth grader at Kreeger Elementary School.

15.     On September 15, 2021, a Review of Existing Educational Data (REED) Meeting was held involving the Father and various staff members.

16.     On September 15, 2021, Student was provided with a 504 Plan based on his diagnoses of Adjustment Disorder and Post Traumatic Stress Disorder (PTSD).

17.     As part of the District's special education evaluation, the teachers and staff determined that the Student's suspected disability does not interfere with access to and progress in general education to the degree that the student requires special education programs/services.   This violated all three of the statues referenced herein.

18.     The District supposedly had a behavioral plan in place.  The Student's teacher, Mr. Moorehead, stated the behavioral plan was one used with multiple

students and that it consisted of the school "just throwing stuff against the wall to see what worked."

19.     The District staff who evaluated the Student determined that his behaviors were caused by a social maladjustment, not an emotional impairment or any other disability.

20.     The District conducted a Multidisciplinary Evaluation Team (MET) Report and Eligibility Recommendation for Emotional Impairment on January 5, 2022.

21.     On February 23rd, the Student's behavior led to a suspension which culminated in an expulsion.

22.     The District conducted Manifestation Determination Review (MDR) Hearings on January 12, February 14, and March 1, 2022.  Every time the District determined that the Student's behavior was not a manifestation of his disability.

23.     The District refused to conduct a Functional Behavior Assessment (FBA) after each of these hearings.

24.     Despite the many behavioral incidents, suspensions and an expulsion, the District did not perform a Functional Behavioral Analysis for the Student until February 10, 2023.

25. On March 9, 2022, the District provided a letter to the Parent indicating, by a disciplinary hearing, the District approved a motion that the Student be expelled for 180 school days.

26. The Father subsequently appealed that decision to the School Board.

27. The District refused to allow J.C. to attend an online school following its decision to expel him, despite the Father signing him up for school.

28. The District refused to allow J.C. to participate in recreational soccer even though it was held away from school grounds.

29. On April 11, 2022, the Father filed a state complaint claiming that the Student was wrongfully expelled from school.

30. As a result of the state complaint, the state found that the District did not provide proper training for its staff regarding its child find obligation.

31. The state complaint found that the District failed to meet its child find obligation, pursuant to 34 CFR § 300.111, and did not conduct a full and individual initial evaluation of the Student in all areas of suspected disability and did not correctly apply the standards for determining eligibility, consistent with 34 CFR §§ 300.300 through 300.306, R 340.1706, R 340.1721, R 340.1721a, and R 340.1721b.

32. The state complaint found that the 504 Plan accommodations were not sufficient to curtail the problems with the Student's behavior.

33.     The state complaint found that the District indicated a plan to implement a Section 504 plan for five weeks and review the data collected from the accommodations in the Section 504 plan to determine if the District would move forward with a full initial evaluation.

34.     The state complaint found that the District did not follow its own written policies and procedures to, as early as possible, conduct an initial evaluation for any child the District knows, or suspects, may have a disability.

35.     The state complaint found that the District has a practice that upon parent request for a special education evaluation, it holds a review of existing evaluation data meeting and then puts a Section 504 plan in place to collect additional data for six weeks following the review of existing evaluation data meeting, which results in delaying the special education evaluation.

36.     The District limited the scope of J.C.'s initial special education evaluation to only consider the category of emotional impairment.

37.     The state complaint found that the District failed to consider Other Health Impairment (OHI) as a suspected area of disability.  The state complaint also found that the District failed to consider the impact of J.C.'s chronic and acute health problems, specifically his adjustment disorder with mixed disturbance of emotions and post-traumatic stress disorder.  As such, J.C. was not

comprehensively evaluated. By law, this constitutes the District's denial J.C.'s right to a Free Appropriate Public Education (FAPE).

38.    As a direct and proximate result of the District's failure to meet its child find obligation, J.C. was expelled from school when he should not have been.

39.    J.C. returned to school following his expulsion on or around November 2022.

40.    Even following the expulsion, the District continued to discriminate against the Student and violate his rights as a student with a disability by improperly conducting Manifestation Determination Review (MDR) hearings.

41.    During the Student's sixth-grade school year, the Father filed another state complaint regarding the manner in which the District conducted MDR Hearings for the Student. As a result of the state complaint, the state found that the District had acted contrary to law and had committed a violation. The J.C.'s Father prevailed.

42.    In May 2022, Dr. Kathryn Combs conducted an Independent Educational Evaluation (IEE) for J.C. Dr. Combs diagnosed the Student with Attention-Deficit/Hyperactivity Disorder (ADHD); specific learning disorders in reading, math, and written expression; and generalized anxiety disorder.

43.    J.C.'s Father missed a lot of time from work supervising the Student while he was not in school.

44.     J.C.'s Father would often drive the Student to the public library during the day and pick him up from the library.

45.     As a result of the District's actions, J.C. was forced to miss 180 days of school.

46.     The District prohibited J.C. from participating in extra-curricular activities, including soccer, even though soccer practice was not located at the school.

47.     Since returning to school from his expulsion, J.C. has been unable to reacclimate into the school system.

48.     The J.C.'s faith in teachers and school staff is shattered.  Since his expulsion, the J.C. does not believe that school officials are acting in his best interest.

49.     J.C. has legal problems stemming from his experience being expelled.

50.     J.C. lost the ability to have companionship with people his own age. He lost friends because he was expelled.  He has not been able to regain these friends.

51.     J.C.'s learning regressed due to his expulsion from school and he has not caught up.  In fact, J.C. despairs of ever catching up.

52.     J.C.'s drug problems worsened once the District expelled him from school.

53.     J.C. gained weight due to the emotional trauma he suffered from being out-of-school.

54.     J.C. isolated himself and stayed in his bedroom for long periods at a time.

55.     As a result of the District's actions, J.C. developed suicidal ideations.

56.     Since he has been expelled, J.C. has been committed to a mental hospital twice.  He had never been hospitalized prior to the expulsion.

## LEGAL CLAIMS

## COUNT I

## DEFENDANT VIOLATED SECTION 504 OF THE REHABILITATION ACT, 29 U.S.C. § 794

57.     Plaintiff incorporates by reference all previous paragraphs of the Complaint herein.

58.     Pursuant to Section 504 of the Rehabilitation Act of 1973 ("Section 504") and its regulations, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794.

59.     Defendant, Fowlerville Community Schools, is a recipient of federal financial assistance and operates a public elementary or secondary education program or activity. Therefore, it is a covered entity under 29 U.S.C. § 794.

60.     J.C. is a person with a disability within the meaning of 29 U.S.C. § 794.

61.     Defendant has intentionally discriminated against J.C. by failing to fully evaluate him for a disability and by having unjustly expelled him from school in violation of 29 U.S.C. § 794 and its implementing regulations.

62.     Defendant has intentionally discriminated against J.C. by excluding him from participation in and denying him the benefits of Defendant's programs or activities solely because he has mental illness, in violation of 29 U.S.C. § 794 and its implementing regulations.

63.     Defendant has otherwise intentionally discriminated against J.C. in violation of Section 504.

64.     As a direct and proximate cause of Defendant's violation of Section 504, J.C. has suffered and continues to suffer severe and grievous mental and emotional suffering, humiliation, stigma, and other injuries he will continue to suffer.

65.     As a direct and proximate cause of Defendant's violation of Section 504, J.C. and his father suffered and continues to suffer economic damages and other injuries they will continue to suffer.

## COUNT II

## DEFENDANT VIOLATED TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §§ 12131 *et seq.*

66.     Plaintiff incorporates by reference all previous paragraphs of the Complaint herein.

67.     Title II of the ADA and its regulations provide that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. (*See also* 28 C.F.R. Part 35).

68.     Defendant is a public entity subject to Title II of the ADA, 42 U.S.C. § 12131.

69.     J.C. is a person with a disability within the meaning of 42 U.S.C. § 12102.

70.     Defendant intentionally violated J.C.'s rights under the ADA and its regulations by excluding him from participation in and denying him the benefits of Defendant's services, programs, and activities, on the basis of disability, and by subjecting him to discrimination in violation of 42 U.S.C. § 12132.

71.     Defendant otherwise intentionally discriminated against J.C.in violation of 42 U.S.C. § 12132.

72.     As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has experienced severe and grievous mental and emotional suffering, humiliation, stigma, and other injuries he will continue to suffer.

73.     As a direct and proximate cause of Defendant's violation of the ADA, Plaintiff and his father suffered and continue to suffer economic damages and other injuries they will continue to suffer.

## COUNT III

## DEFENDANT VIOLATED THE PERSONS WITH DISABILITIES CIVIL RIGHTS ACT, M.C.L. 37.1101 *et seq.*

74.     Plaintiff incorporates by reference all previous paragraphs of the Complaint herein.

75.     The Persons with Disabilities Civil Rights Act ("PDCRA") guarantees, as a civil right, the full and equal utilization of public accommodations, public services, and educational facilities without discrimination because of a disability. M.C.L. 37.1102.

76.     The PDCRA further prohibits educational institutions from "[d]iscriminat[ing] in any manner in the full utilization of or benefit from the institution, or the services provided and rendered by the institution to an individual because of a disability that is unrelated to the individual's ability to utilize and benefit from the institution or its services, or because of the use by an individual of adaptive devices or aids." M.C.L. 37.1402.

77.     Defendant is an educational facility within the meaning of M.C.L. 37.1102 and an educational institution within the meaning of M.C.L. 37.1401.

78.     J.C. has a disability as defined in M.C.L.A. 37.1103.

79. J.C.'s disability is unrelated to his ability to utilize and benefit from Defendant's services.

80. Defendant discriminated against J.C. in the full utilization of or benefit from the services provided and rendered by Defendant due to J.C.'s disability.

81. Defendant otherwise violated J.C.'s rights under the PDCRA.

82. As a direct and proximate result of Defendant's violation of the PDCRA, Plaintiff has experienced severe and grievous mental and emotional suffering, humiliation, stigma, and other injuries he will continue to suffer.

83. As a direct and proximate cause of Defendant's violation of the PDCRA, Plaintiff and his father suffered and continue to suffer economic damages and other injuries they will continue to suffer.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

A. Find that Defendant violated state and federal law;

B. Find that Plaintiffs are the prevailing party;

C. Award Plaintiffs compensatory damages;

D. Award Plaintiffs their reasonable attorney's fees and costs under 42 U.S.C. § 1988 and/or other applicable statues; and

E. Any other relief deemed necessary.

Dated: October 6, 2023

Respectfully submitted,

Jason Daniel Wine (P57906)
10045 Elgin Avenue
Huntington Woods, MI 48070-1501
jdwadvocacy@aol.com
248.214.3125