UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUSTIN T. CLAYTON, on behalf of his minor son, J.C.,

          Plaintiffs,

v.

FOWLERVILLE COMMUNITY SCHOOLS,

          Defendant.
_____/

Case No. 2:22-cv-12156

Honorable Susan K. DeClercq
United States District Judge

**OPINION AND ORDER DENYING MOTION TO DISMISS (ECF No. 30)**

Justin Clayton is a concerned father who wants his son, J.C., to get the educational support he needs to succeed. Defendant Fowlerville Community Schools (FCS) is bound by state and federal law to provide support to students like J.C., whose disabilities affect their education. And while it is impossible to expect perfection from school districts, which are already under tremendous pressure and stretched very thin, it is also a significant problem when school districts intentionally shirk their duties to disabled students.

Clayton goes beyond alleging that FCS was negligent towards his son's disability. Rather, he claims that FCS intentionally delayed fully and properly evaluating J.C. and other disabled students, leaving them vulnerable in the meantime. Because Clayton alleges enough facts to support an inference of bad

faith, and because the procedural questions of standing and preclusion do not bar his claims, FCS's motion to dismiss will be denied.

## BACKGROUND

The following allegations come from Clayton's third[1] amended complaint, ECF No. 29. Clayton's minor son, J.C., has been a student at Fowlerville Community Schools since 2019. *Id.* at PageID.1097. J.C. has a history of mental and learning disorders, including adjustment disorder with disturbance of emotions and conduct, post-traumatic stress disorder, Attention-Deficit/Hyperactivity Disorder, specific learning disorders in reading, math, and written expression, and generalized anxiety disorder. *Id.* at PageID.1098, 1103. In addition, J.C. has "a long history of behavioral issues at school." *Id.* at PageID.1098. Because of these behavioral issues, J.C. has frequently faced disciplinary action, including suspensions and expulsions. *Id.* at PageID.1099.

In light of his son's disciplinary history, Clayton requested on September 2, 2021, that FCS conduct a special-education evaluation for J.C. *Id.* On September 15, Clayton met with district staff members for a Review of Existing Educational Data meeting. *Id.* After that meeting, J.C. had a 504 Plan based on his diagnoses of adjustment disorder and PTSD. *Id.* FCS determined that J.C.'s disability did not

---

[1] Although the document is titled "Plaintiff's Second Amended Complaint," it is effectively the third and will be addressed as such throughout. The three prior complaints are at ECF Nos. 1; 17; 27.

interfere with this education to the degree that he needed special-education services. *Id.* Further, FCS determined that J.C.'s behavioral issues were not caused by his disability. *Id.* at PageID.1100.

On February 23, 2022, J.C. had a behavioral incident that resulted in his expulsion.[2] *Id.* FCS conducted Manifestation Determination Review Hearings and determined that J.C.'s behavior was not a manifestation of his disability. *Id.* As a result of the expulsion, FCS prohibited J.C. from attending online school or participating in recreational soccer away from school grounds. *Id.* at 1101.

Clayton filed an administrative complaint with the Michigan Department of Education challenging the expulsion. *Id.* The Department found that (1) FCS did not provide proper training on its child-find obligation,[3] (2) FCS failed to meet its child-find obligation as to J.C., (3) FCS did not conduct a full and individual initial evaluation of J.C. in all areas of suspected disability and did not apply the correct standards for eligibility, (4) J.C.'s 504 Plan accommodations were insufficient, (5) FCS intentionally delays evaluations by implementing short-term 504 plans to

---

[2] The third amended complaint does not expand upon the incident. An exhibit attached to the motion to dismiss, considered as central to the complaint under *Weiner v. Klais & Co., Inc.,* 108 F.3d 86, 89 (6th Cir.1997), describes J.C.'s actions as "being defiant," "swearing," and "giving the middle finger" to staff. ECF No. 30-3 at PageID.1144.

[3] Consistent with the Individuals with Disabilities Education Act (IDEA), the Department of Education defines the "child find" obligation as the requirement to "identif[y], locate[], and evaluate[]" all children with disabilities residing in the state for special education services as needed. 34 C.F.R. § 300.111; *see also* Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.*

collect additional data rather than conducting evaluations as early as possible, and (6) FCS narrowed the scope of J.C.'s initial special-education evaluation, failing to sufficiently consider J.C.'s mental disorders. *Id.* at PageID.1101–03.

J.C. returned to school following his expulsion in November 2022. *Id.* at 1103. Clayton alleges that even after J.C.'s return, FCS has improperly conducted manifestation-determination-review hearings for him. *Id.* Further, as a result of the expulsion, J.C. has had trouble reacclimating to school, has been unable to catch up on the material he missed, has lost friends and his relationships with school staff, and has had worsening legal, drug, and health problems. *Id.* at PageID.1104–05.

Clayton brought suit against FCS for intentional discrimination under § 504 of the Rehabilitation Act of 1973 ("§ 504"), Title II of the Americans with Disabilities Act ("ADA"), and Michigan's Persons with Disabilities Civil Rights Act ("PDCRA"). FCS now moves to dismiss. ECF No. 30.

### I.  STANDARD OF REVIEW

Under Civil Rule 12(b)(6), a pleading fails to state a claim if its allegations do not support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).

The plaintiff need not provide "detailed factual allegations" but must

provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do."). The complaint is sufficient if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also 16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). If not, the court must grant the motion to dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## II. ANALYSIS

FCS raises three arguments for dismissal. First, FCS asserts that Clayton lacks standing to sue on J.C.'s behalf because he has not established that he is J.C.'s biological father. Second, FCS argues that a related prior state-court decision precludes Clayton's § 504 claims. Third, FCS argues that Clayton's § 504 and ADA claims (Counts I and II) should be dismissed under Civil Rule 12(b)(6). As for the state PDCRA claim, FCS requests that this Court decline supplemental jurisdiction. As explained below, all three of Clayton's claims will be allowed to continue.

### A. Standing

FCS first argues that Clayton lacks standing to sue on J.C.'s behalf because he is not J.C.'s biological father and he failed to allege any other legal status that

would confer standing under Civil Rule 17. ECF No. 30 at PageID.1120. Under Civil Rule 17(c)(1), a "general guardian" may sue "on behalf of a minor." This means that a parent may sue on behalf of their child without special permission from the court. *See Doe v. Shea*, No. 23-12797, 2023 WL 7993436, at *1 (E.D. Mich. Nov. 17, 2023) (collecting cases). Here, because Clayton alleges that he is J.C.'s father, (i.e., "by and through his father"), he has plausibly alleged that he has standing under Civil Rule 17.

FCS argues that Clayton does not have a legal relationship to J.C. because in an administrative hearing, Clayton admitted that he was not J.C.'s biological father. While this Court may consider exhibits attached to FCS's Motion to Dismiss if they are "referred to in the plaintiff's complaint and are central to her claim," *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), it would be improper to consider FCS's exhibit here. That is because Clayton did not refer to the administrative hearing, nor is his *biological* relationship—as opposed to his *legal* relationship—to J.C. central to the claim. Clayton unequivocally asserts that he is J.C.'s father in his complaint, and while minimal, this alone is enough to survive a challenge at this stage.[4]

---

[4] This Court does note, however, that in his Report and Recommendation, Magistrate Judge Patti did clearly state that "[i]n any amended pleading filed by Clayton, he must. . . explain his *legal* relationship to J.C. (including specific details as to how and when he was granted that relationship)." ECF No. 22 at PageID.1068–69. Clayton's third amended complaint certainly does not provide

That said, to the extent Clayton brings claims on his *own* behalf, he lacks standing to do so. *See Clayton v. Kroopnick*, No. 2:22-cv-12156, 2023 WL 5423623, at *4–5 (E.D. Mich. June 23, 2023), *report and recommendation adopted*, No. 2:22-cv-12156, 2023 WL 5411004 (E.D. Mich. Aug. 22, 2023) (collecting cases). Although Clayton alleges that he "missed a lot of time from work supervising [J.C.] while he was not in school" and "would often drive [J.C.] to the public library during the day and pick him up from the library," ECF No. 29 at PageID.1103–04, these incidents are not enough to confer standing. *Sorah v. Tipp City Exempted Vill. Sch. Dist. Bd. of Educ.*, 611 F. Supp. 3d 441, 450 (S.D. Ohio 2020) (holding that mother had no standing to sue for her own lost wages and emotional distress in suit against school district on behalf disabled child). Because Clayton did not allege an adverse action *against him directly*, he lacks standing to pursue claims *on his own behalf* under the ADA and § 504. *Id.*

### B.   Preclusion

Next, FCS argues Clayton's § 504 claims because are barred by issue and claim preclusion because of Clayton's administrative due process hearing. ECF No. 30 at PageID.1122. However, that decision is not entitled to preclusive effect.

Sometimes, plaintiffs suing under the ADA or § 504 must exhaust the Individuals with Disabilities Education Act (IDEA)'s administrative procedures

---

the requested amount of detail. Nonetheless, he meets the Civil Rule 17 requirement at this stage.

before filing a federal action. *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 165 (2017). However, with statutory frameworks requiring exhaustion, the Supreme Court has consistently implied that federal courts should not give those administrative procedures preclusive effect. *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 110–11 (1991). In *Astoria*, the Court wrote: "A complainant who looks to federal court after termination of state proceedings will [] ordinarily do so only when the state agency has held against him. In such a case, however, the [defendant] would likely enjoy an airtight defense of collateral estoppel if a state agency determination on the merits were given preclusive effect." *Id.* at 111. Although administrative exhaustion screens cases that may be easily resolved by agency procedures, giving those decisions preclusive effect would render the federal cause of action meaningless. *Id.*

Here, Clayton seeks compensatory damages, which does not require exhaustion of remedies on its own, *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 150 (2023), but he also alleges a denial of free appropriate public education (FAPE), and seeks both declaratory relief (i.e., that this Court "[f]ind that Defendant violated state and federal law") and "any other relief deemed necessary." ECF No. 29 at PageID.1109. Reading his complaint generously, Clayton's complaint was subject to IDEA's exhaustion requirements despite his claims arising under the ADA and § 504. *Fry*, 580 U.S. at 168 ("If a lawsuit

charges [a denial of FAPE], the plaintiff cannot escape [the exhaustion requirement] merely by bringing her suit under a statute other than the IDEA"). As such, it would be improper to give any preclusive effect to the administrative decisions that were issued during his exhaustion process. *Astoria*, 501 U.S. at 110–11. Accordingly, issue and claim preclusion do not bar Clayton's claims.

### C. Failure to State a Claim

Clayton raises three claims: violations of § 504, the ADA, and PDCRA. These statutes are incredibly similar, in that their "reach and requirements . . . are precisely the same." *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 452–53 (6th Cir. 2008) (quoting *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 146 n.6 (2d Cir. 2002)); *see also Hoot v. Milan Area Schs.*, 853 F. Supp. 243, 248 n. 5 (E.D. Mich. 1994) (recognizing that elements and test for PDCRA claims "mirror[] the requirements of Section 504 of the Rehabilitation Act and the ADA"). The main issue here is whether Clayton has plausibly alleged "bad faith or gross misjudgment" on the part of FCS—which is a requirement that the Sixth Circuit recently adopted for § 504 and ADA claims. *Li v. Revere Loc. Sch. Dist.*, No. 21-3422, 2023 WL 3302062, at *12 (6th Cir. May 8, 2023) (citing *G.C. v. Owensboro Pub. Schs.*, 711 F.3d 623, 635 (6th Cir. 2013)).

FCS argues that none of Clayton's allegations rise to the level of bad faith or gross misjudgment. ECF No. 30 at PageID.1131. Although many of Clayton's

allegations sound in negligence, which is insufficient for § 504 and ADA claims, *see Li*, 2023 WL 3302062 at *13, Clayton also alleges facts that go one step further and make plausible an inference of bad faith. Specifically, Clayton alleges that before J.C.'s expulsion, he requested a special-education evaluation but instead received a 504 Plan. ECF No. 29 at PageID.1099. According to Clayton, the failure to give J.C. a full special-education evaluation led to J.C.'s expulsion. *Id.* at PageID.1101 ("the 504 Plan accommodations were not sufficient to curtain the problems with the Student's behavior").

On their own, these allegations do not necessarily evince bad faith. However, Clayton crucially alleges the following:

> The District has a practice that upon a parent request for a special education evaluation, it holds a review of existing evaluation data meeting and then puts a Section 504 plan in place to collect additional data for six weeks following the review of existing evaluation data meeting, which results in delaying the special education evaluation.

*Id.* at PageID.1102. This allegation, taken as true, supports a reasonable inference that the District *intentionally* delayed conducting J.C.'s special-education evaluation, which ultimately led to his expulsion. Drawing all reasonable inferences in Clayton's favor, that is enough for bad faith at this stage.

Because the federal claims under § 504 and the ADA remain, this Court will exercise supplemental jurisdiction over the PDCRA claim, given the common nucleus of operative fact between the federal and state claims. *United Mine*

*Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

### III. CONCLUSION

Accordingly, it is **ORDERED** that Defendants' Motion to Dismiss, ECF No. 30, is **DENIED.**

**This is not a final order and does not close the above-captioned case.**

> */s/Susan K. DeClercq*
> SUSAN K. DeCLERCQ
> United States District Judge

Dated: 9/30/2024